IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROBERT FORCE**<br>68 Friendly Lane<br>Levittown, PA 19055 | NO. _____ |
| vs. | CIVIL ACTION |
| **MARSHALL INDUSTRIAL TECHNOLOGIES, INC.**<br>529 South Clinton Avenue<br>Trenton, NJ 08611<br>-and-<br>**ADP TOTALSOURCE FL XVIII, INC**<br>10200 Sunset Drive<br>Miami, FL 33173<br>-and-<br>**MARSHALL MAINTENANCE**<br>10200 Sunset Drive<br>Miami, FL 33173 | JURY TRIAL DEMANDED |

## COMPLAINT

Robert Force (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Plaintiff against the Marshal Industrial Technologies, Inc., ADP TotalSource FL XVII, Inc., and Marshall Maintenance (*hereinafter* "Defendants" when referred to jointly) for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 et. seq.), and the New Jersey Law Against Discrimination ("NJ LAD"). Plaintiff asserts, *inter alia*, that he was discriminated against and unlawfully terminated by Defendant. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This action is being initiated pursuant to federal laws (ADA and FMLA) and therefore, the United States District Court for the District of New Jersey also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants reside in and/or conducts business in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff is proceeding herein (in part) under the ADA, after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant Marshall Industrial Technologies, Inc. is a plant installation, maintenance, and repairs with headquarters at the address as set forth in the above-caption.

9. Defendant ADP TotalSource FL XVIII, Inc. (*hereinafter* "Defendant ADP TotalSource") is listed as Plaintiff's employer on his paystubs and W-2 forms and is a company that provides human resources services through a co-employment relationship with Marshall Maintenance, with an address as set forth in the above-caption.

10. Defendant Marshall Maintenance (*hereinafter* "Defendant Marshall Maintenance") is listed as Plaintiff's employer on his paystubs and W-2 forms, with an address as set forth in the above-caption.

11. Plaintiff received his paystubs and W-2 forms from Defendants ADP TotalSource FL XVIII, Inc./Marshall Maintenance, received his termination letter from ADP TotalSource FL XVIII, Inc. which states. "ADP TotalSource provides human resources services to worksite employees like you through a co-employment relationship with Marshall Maintenance." Therefore, Defendants may be treated as a single and/or joint employer for purposes of the instant action.

12. At all times relevant herein, Defendants acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendants.

## FACTUAL BACKGROUND

13. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14. Plaintiff was employed by Defendants for approximately 15 years, from in or about 2005 until his unlawful termination (discussed further *infra*) on or about April 1, 2020.

15. Plaintiff was employed as a welder/fabricator in the machinist group.

16. At the end of Plaintiff's employment with Defendants, Plaintiff was primarily supervised Machine Shop Manager, Walter "Ed" Sauer (*hereinafter* "Sauer"), and was generally overseen by President, John Mako ("Mako").

17. Throughout his employment with Defendants, Plaintiff was a hard-working employee who performed his job well.

18. Plaintiff has and continues to suffer from several health conditions which were ultimately diagnosed as atrial fibrillation, anemia, gastrointestinal bleeding, and kidney related health conditions (and resulting complications).

19. As a result of his aforesaid serious health conditions, Plaintiff suffers from stomach/internal pain, bleeding and discomfort, which (at times) limits his ability to perform some daily life activities, including but not limited to using the bathroom and working (among other daily life activities).

20. Despite his aforementioned health conditions and limitations, Plaintiff was still able to perform the essential duties of his job well with Defendants; however, Plaintiff did require reasonable medical accommodations at times (discussed *infra*).

21. In or about February of 2020, Plaintiff contacted Defendants' Human Resources ("HR") to inquire regarding short-term disability ("STD") and Family and Medical Leave Act ("FMLA") in order to take limited time off to care for his aforesaid health conditions.

22. Plaintiff approved for a medical leave of absence under the FMLA, which he commenced on or about March 9, 2020, with an anticipated return to work date of April 28, 2020.

23. On or about March 31, 2020, Plaintiff received a telephone call from Sauer stating that due to a lack of work because of the COVID-19 pandemic and **because Plaintiff was already out on sick leave**, Plaintiff was being "laid-off" and was advised to apply for/collect unemployment benefits.

24. During the telephone conversation with Sauer on or about March 31, 2020, Plaintiff informed Sauer he would be evaluated by his doctor again on or about April 15, 2020 (**prior to the exhaustion of his FMLA leave**), at which time he would likely be released to return to work full duty.

25. However, **one day later**, on April 1, 2020, Plaintiff received a letter from Defendant ADP TotalSource informing him of his termination from Defendants and that their services and benefits would be discontinued.

26. Upon information and belief, many of Defendants' laid-off employees were returning to work. Therefore, Plaintiff contacted Mako regarding returning to work, and Mako informed Plaintiff that things were "slow" and that he "didn't see [Plaintiff] coming back to work in the future."

27. Based on Sauer's aforementioned comments about Plaintiff being laid off because he was already out on sick leave, it is clear that Defendants did not hold Plaintiff's job open during his brief FMLA leave, and terminated his employment because of his health conditions and requests for accommodations.

28. Plaintiff was selectively terminated as a result of his serious health conditions and/or request for accommodations because (1) less qualified, less skilled and/or less senior employees in Plaintiff's department were retained or called back from "lay-off" status; and (2) upon information and belief, since Plaintiff's termination, Defendants have hired new employees

5

(yet have not called back Plaintiff to work).

29. Plaintiff believes and therefore avers that he was terminated and/or not reinstated to his position because of (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested accommodations (discussed *supra*); and/or (4) Defendants' failure to properly accommodate Plaintiff by failing to reinstate him to his same or similar role following his return from medical leave.

## COUNT I
## Violation of the Americans with Disabilities Act, as Amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)

30. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

31. Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities, including but not limited to walking, standing, and working (among other daily life activities).

32. Plaintiff kept Defendants' management informed of his serious medical conditions and need for medical treatment and other accommodations.

33. Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendants; however, Plaintiff did require reasonable accommodations at times.

34. Plaintiff requested reasonable accommodations from Defendants including a brief medical leave of absence.

35. Plaintiff was abruptly terminated from his employment with Defendants in close proximity to his requests for/utilization of reasonable accommodations, while he was out on

protected leave, and one day after he informed Sauer he anticipated to be cleared to return to work to full duty when he saw his doctor on April 14, 2020.

36. Upon Plaintiff's information and belief, Defendants failed to accommodate Plaintiff by failing to return him to his same or similar position upon his return from medical leave.

37. Plaintiff believes and therefore avers that because he was terminated and/or not reinstated to an alternative role because of (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested accommodations (discussed *supra*); and/or (4) Defendants' failure to properly accommodate Plaintiff by failing to reinstate him to his same or similar role following his return from medical leave.

38. These actions aforesaid constitute violations of the ADA.

## COUNT II
## Violation of the New Jersey Law Against Discrimination (NJ LAD)
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)

39. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

40. Plaintiff suffered from qualifying health conditions under the NJ LAD which affected his ability (at times) to perform some daily life activities, including but not limited to walking, standing, and working (among other daily life activities).

41. Plaintiff kept Defendants' management and HR informed of his serious medical conditions and need for medical treatment and other accommodations.

42. Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendants; however, Plaintiff did require reasonable accommodations at times.

43. Plaintiff requested reasonable accommodations from Defendants including a brief medical leave of absence.

44. Plaintiff was abruptly terminated from his employment with Defendants in close proximity to his requests for/utilization of reasonable accommodations, while he was out on protected leave, and one day after he informed Sauer he anticipated to be cleared to return to work to full duty when he saw his doctor on April 14, 2020.

45. Upon Plaintiff's information and belief, Defendants failed to accommodate Plaintiff by failing to return him to his same or similar position upon his return from medical leave.

46. Plaintiff believes and therefore avers that because he was terminated and/or not reinstated to his position because of (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested accommodations (discussed *supra*); and/or (4) Defendant's failure to properly accommodate Plaintiff by failing to reinstate him to his same or similar role following his return from medical leave.

47. These actions aforesaid constitute violations of the NJ LAD.

## COUNT III
### Violations of the Family and Medical Leave Act ("FMLA")
**(Interference & Retaliation)**

48. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

50. Plaintiff requested leave from Defendants, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

51. Plaintiff had at least 1,250 hours of service with Defendants during his last full year of employment.

52. Defendants are engaged in an industry affecting commerce and employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

53. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

54. Plaintiff requested FMLA leave from on or about March 9, 2020 until on or about April 28, 2020.

55. Plaintiff was terminated in close proximity to his requests for/utilization of FMLA leave, in fact **<u>while he was utilizing FMLA leave</u>**.

56. Defendants committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) considering Plaintiff's FMLA leave needs in making the decision to terminate him; (3) terminating Plaintiff to intimidate him and/or prevent him from taking FMLA-qualifying leave in the future; (4) making negative comments and/or taking actions towards him that would dissuade a reasonable person from exercising his rights under the FMLA; and (5) failing to reinstate Plaintiff to his same or similar position upon his return from FMLA leave.

57. These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff

whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for its willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F. Plaintiff is to be awarded any and all statutory enhancements available as a matter of law.

G. Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

        Respectfully submitted,

        **KARPF, KARPF & CERUTTI, P.C.**

By: _____
        Ari R. Karpf, Esq.
        W. Charles Sipio, Esq.
        Allison A. Barker, Esq.
        3331 Street Rd.
        Two Greenwood Square, Suite 128
        Bensalem, PA 19020
        (215) 639-0801

Dated: July 26, 2021